Stephen WOEHRLE, et al., Appellants,

v.

CITY OF MANKATO, et al., Respondents.

No. C4–01–2123.

Court of Appeals of Minnesota.

July 16, 2002.

Sharon L. Van Dyck, Schwebel, Goetz & Sieben, P.A., Minneapolis, for appellants.

Jon K. Iverson, Jason J. Kuboushek, Iverson Reuvers, LLC., Bloomington, for respondents.

Considered and decided by SCHUMACHER, Presiding Judge, PETERSON, Judge, and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.*

This is an appeal from the district court's determination that the City of Mankato and its fire department were not liable in negligence for property damage suffered by appellant homeowners when firefighters responded to a fire in appellants' building.[1] Appellants contend that the court erred by (a) not finding that the failure to shut off a gas line fueling the fire was negligent as a matter of law; (b) failing to find causation once the court had found that the firefighters were negligent in failing either to shut off the water service or to warn appellants to do so; (c) concluding that appellants' claims were barred by statutory discretionary immunity; and (d) concluding that the city was protected by vicarious official immunity. Because the city owed no duty to appellants with respect to the manner in which the firefighters fought the fire, and because appellants failed to prove any water damage caused by the firefighters' failing to shut off the water, we affirm without reaching the immunity issues.

## FACTS

Just after 3 p.m., on April 15, 1994, a fire began on the third floor of a Mankato apartment building owned by appellants Stephen and Avis Woehrle. The third-floor tenant informed the Woehrles, who lived on the first floor, that he had disconnected a natural gas line causing an explosion. Within minutes, Fire Commander Doug Berghorst and other city firefighters arrived and began to extinguish the fire. Based on his brief survey of the fire, Berghorst directed the dispatcher to call all available firefighters as well as the gas and electrical utility companies.

Berghorst positioned the firefighting equipment at the front of the building despite the Woehrles' request to fight the fire from the rear so as to protect their first-floor possessions from water damage. Pursuant to a department practice of having the utility company shut off gas lines, the firefighters did not shut off a gas line that was fueling the fire. At approximately 3:55 p.m., gas company employees shut off the gas. The firefighters did not help appellants cover their first-floor possessions. Firefighters did, however, permit Stephen to retrieve his six cars from the garage, and they retrieved items for a second-floor tenant. By approximately 8:20 p.m., the fire was extinguished. The third floor was destroyed, and approximately 150,000 gallons of water were "raining" down on the first floor. The next day, appellants learned that more water from burst water pipes had continued to leak onto their possessions overnight. The firefighters had not shut off the water service or warned appellants to do so.

The Woehrles sued the city and its fire department for property damage. The city asserted, among other defenses, that the cause of action was barred by the

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. From the record, it is not clear if the City of Mankato Fire Department is a separate legal entity subject to suit. In their complaint in district court appellants allege that respondents "were and are municipal corporations." Respondents' answer denies that "the City of Mankato Fire Department is a legal entity subject to suit." The district court refers to the respondents in the plural. We will refer to the respondents as "the city."

public-duty doctrine.[2] The parties agreed to a bench trial, and in July 2001, the court ruled that (1) the city was not negligent in fighting the fire; (2) the city was immune from suit; and (3) although the city was negligent in not turning off the water, the Woehrles did not prove that this caused any water damage that was distinct from the water damage caused by extinguishing the fire. The Woehrles moved for amended findings, a new trial, and JNOV, which the court denied.

## ISSUE

Is the city liable in negligence for the Woehrles' property damage when firefighters failed to shut off a gas line and failed to shut off water service?

## ANALYSIS

▮▮▮ "Findings of fact * * * shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. A district court's denial of a new-trial motion "must stand unless it is manifestly and palpably contrary to the evidence, viewed in the light most favorable to the verdict." *ZumBerge v. N. States Power Co.*, 481 N.W.2d 103, 110 (Minn. App.1992), *review denied* (Minn. Apr. 29, 1992). The denial of a JNOV "must be affirmed, if, in the record, there is any competent evidence reasonably tending to sustain the verdict." *Pouliot v. Fitzsimmons*, 582 N.W.2d 221, 224 (Minn.1998) (quotation omitted).

**2.** At oral argument, appellant asserted the city has waived its public-duty defense. But the city asserted this defense in its answer, and because we review the existence of a legal duty de novo, it makes no difference that the district court did not address the public-duty doctrine. Moreover, because the city did not

## I.

▮▮ To establish negligence, a party must prove (1) duty; (2) breach; (3) causation; and (4) damages. *Schweich v. Ziegler, Inc.*, 463 N.W.2d 722, 729 (Minn. 1990). The existence of a duty is a question of law. *Lundman v. McKown*, 530 N.W.2d 807, 820 (Minn.App.1995), *review denied* (Minn. May 31, 1995). Breach and causation are questions of fact. *Id.* at 828.

▮▮ The Woehrles argue that the firefighters were negligent by not turning off the gas line when they arrived at the scene even though (1) the firefighters knew that the gas line was fueling the fire and where the gas line was located; (2) the gas line was in plain view and easy to access; (3) the city admitted that it would have liked to fight the fire differently; and (4) the city's firefighters currently shut off gas lines. The Woehrles also argue that the firefighters were negligent in failing to salvage any first-floor property, or refusing to let the Woehrles do so, even though the fire was isolated to the third floor. Finally, the Woehrles argue that whether it was water from the fire hoses or water from the pipes that caused their property damage is a "question of proof properly brought during the presentation of damages at the binding arbitration."[3]

In our view, however, the city owed no duty to the Woehrles concerning the manner in which the fire was fought. We have previously noted that

> [t]he public duty doctrine * * * protects the City from liability. For over 100 years, Minnesota courts have recognized that firefighting is a general public duty,

suffer an adverse ruling below, it had no obligation to file a notice of review on this issue.

**3.** The parties agreed to submit the damages determination to arbitration.

rather than a special duty owed to individuals.

*Dahlheimer v. City of Dayton,* 441 N.W.2d 534, 537 (Minn.App.1989) (citations omitted), *review denied* (Minn. Aug. 15, 1989). In *Dahlheimer,* we held that a city is not liable for failure to provide fire protection and that general allegations of negligent conduct by a fire department cannot support an action for negligent firefighting. *Id.* Nor is a city liable for its fire department's tactical decisions in fighting a fire. *Id.* at 539. Specifically, in *Dahlheimer,* we held that the decision to let a barn burn and not salvage the lumber was a tactical decision and was based on policies of resource use, risk to human life, and containment. *Id.* at 536. We also pointed to public policy, stating that

> [i]t is inappropriate for a jury or court to second-guess a complicated decision made during a fire because it would submit the tactical decisions of fire chiefs to the monetary and psychological threats of litigation. Such after-the-fact scrutiny would require that courts and juries dictate firefighting strategy, the amount of equipment deployed, and services offered by municipalities. This extensive interference could undermine municipalities' willingness to provide important public services.

*Id.* at 537. Finally, we noted that the abrogation of sovereign immunity did not create any new causes of action against a city and that to recover appellants must prove "a breach of some duty owed them in their individual capacities and not merely a breach of some obligation owed the general public." *Id.* (quoting *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 803–04 (Minn.1979) (other citation omitted)). Finally, we explained that the discretionary-function exception to municipal liability protects policymaking decisions made at the planning level. *Id.* at 538.

The Woehrles rely on *Invest Cast, Inc. v. City of Blaine,* 471 N.W.2d 368, 371 (Minn.App.1991), *review denied* (Minn. Aug. 1, 1991) and argue that how firefighters fight a fire is not within the discretionary-function exception to municipal liability. In *Invest Cast,* this court reversed a summary-judgment ruling in favor of the fire department; we stated that "the implementation of an established policy in a particular fact situation is not within the discretionary function exception." *Id.* (quotation omitted).

*Invest Cast* is distinguishable from the present case on various grounds, such as in *Invest Cast* (1) the firefighters actually caused the fire to spread, and (2) the firefighters exhausted their water supply; whereas here there is no claim (1) that the firefighters caused the fire to spread, or (2) that the firefighters exhausted their water supply. More to the point, however, is our observation that to the extent *Invest Cast* stands for the proposition that an action may lie against a municipality for negligence in fire fighting, it is contrary to "over 100 years" of Minnesota cases, referred to in *Dahlheimer,* above. For these reasons, we conclude that *Invest Cast* should be limited to its facts and does not control the present case.

The Woehrles also argue that *Granite State Ins. Co. v. City of Minneapolis,* No. C0-95-1671, 1996 WL 70009 (Minn.App. Feb.20, 1996), supports their position. In that case, this court affirmed a summary-judgment ruling against the city. We note, however, that "[u]npublished opinions of the court of appeals are not precedential." Minn.Stat. § 480A.08, subd. 3 (2000). In any event, *Granite State* involved a claim that the city was negligent for failure to keep open a fire hydrant; it did not involve a claim of negligent firefighting. *Id.* at *3. That case did not

specifically consider the public-duty doctrine.

We conclude that under the public-duty doctrine articulated in *Dahlheimer*, the Woehrles cannot sue the city for negligent firefighting. In responding to the fire, the city owed a general duty to the public and not an individual duty to the Woehrles.

■ At oral argument, the Woehrles cited *Cracroft* and contended that the city owed them a special duty with respect to the manner in which the fire was fought. However, the Woehrles did not plead a claim of special duty in their complaint, nor did they otherwise raise this claim in district court. The court did not rule on the issue of special duty. Moreover, the Woehrles did not argue this claim in their brief to this court. Therefore, we decline to address this issue. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (stating that this court will generally consider only those issues that were raised and argued in the court below).

## II.

■ The Woehrles next argue that the district court erred when it failed to find causation after it found that the city was negligent in failing to turn off the water supply or instructing the Woehrles to do so. We agree with the district court that the firefighters had a duty either to shut off the water or to inform the Woehrles about the need to do so. But the court found no evidence that the firefighters' actions in that respect caused any water damage that was distinct from the water damage that had already been caused in the course of fighting the fire. Because the firefighters used about 150,000 gallons of water to fight the fire, the record supports the district court's finding that the Woehrles failed to prove additional damage caused by water from the burst pipes. Even the Woehrles' expert testified that the property damage was caused by "firefighting efforts on the third floor second floor."

## DECISION

Under the public-duty doctrine, the City of Mankato did not owe the Woehrles any legal duty concerning the manner in which the firefighters fought the fire. Thus, the district court properly concluded that the city was not negligent with respect to the manner in which the fire was fought. And because the Woehrles offered no evidence as to what water damage was caused by the failure to shut off the water pipes, as opposed to what water damage was incurred in fighting the fire, the district court properly concluded that the firefighters' negligence in that respect did not cause any damage to the Woehrles.

**Affirmed.**