James D. **STUEDEMANN** and Jeanne R. Stuedemann, as co-trustees for the heirs and next of kin to Jolene Stuedemann, Decedent, Appellants,

v.

Tony Allen Roman **NOSE**, Respondent,

**R–Home of Woodbury, Inc., Respondent,**

Robert Ritter and Donna Ritter, individually and as proprietors of Prolawn Landscaping, Respondents,

Kevin Flynn, Respondent.

No. A05–1524.

Court of Appeals of Minnesota.

May 9, 2006.

---

**2.** 1999 Minn. Laws ch. 106, § 1, is codified at Minn.Stat. § 169.685, subd. 4(b) (2004).

Arlo H. Vande Vegte, Arlo H. Vande Vegte, P.A., Long Lake, MN, for appellants.

Tony Allen Roman Nose, Stillwater, MN, pro se respondent.

Louise Dovre Bjorkman, Mark A. Solheim, Marcus R. Sanborn, Larson King, LLP, St. Paul, MN, for respondent R–Home of Woodbury.

Diane B. Bratvold, Richard C. Scattergood, Karen B. Andrews, Rider Bennett, LLP, Minneapolis, MN, for respondents Robert and Donna Ritter.

Bruce P. Candlin, Bruce P. Candlin & Associates, St. Paul, MN, for respondent Kevin Flynn.

Considered and decided by LANSING, Presiding Judge; RANDALL, Judge; and HUDSON, Judge.

## OPINION

RANDALL, Judge.

In this appeal from summary judgments, appellants argue that that the district court erred by dismissing their wrongful-death negligence claims against a foster home, the owners of the foster home, and the foster home's psychologist. Appellants' daughter was murdered by a resident of the foster home. Because we conclude that respondents satisfied any duty they might have had and that respondents' allegedly negligent conduct was not the proximate cause of appellants' daughter's death, we affirm.

## FACTS

From 1997 to June 1999 and from August 1999 to July 2000, Tony Allen Roman Nose lived at Sherwood Home, a group foster home in Woodbury operated by respondent R–Home of Woodbury, Inc. (R–Home). Respondents Robert and Donna Ritter are the sole shareholders and officers of R–Home. Respondent Kevin Flynn is a psychologist who provides counseling and chemical-dependency treatment for the residents of R–Home group foster homes.

Roman Nose has a history of violent behavior, drug and alcohol abuse, and defiant behavior. In June 1999, while in Montana visiting his family for the summer, Roman Nose consumed alcohol and marijuana and attacked a man with a baseball bat. Upon his return to Sherwood Home in August 1999, he had several instances of conflict with other residents, one time throwing a fork at a resident's face. Roman Nose was diagnosed with a chemical-dependency problem, although he passed more than 20 drug tests administered between January and July 2000. He had several curfew violations and unexcused absences from school. Roman Nose also had a tendency to leave Sherwood Home for short periods of time without permission.

While at Sherwood Home, Roman Nose had a treatment plan to address his chemical-dependency and conflict-resolution problems. Roman Nose met with Flynn regularly to discuss chemical dependency, anger management, and behavior problems. Roman Nose also attended group meetings run by Flynn at Sherwood Home and Alcoholics Anonymous meetings. Flynn was ill during April 2000 and unable to perform his counseling duties.

On July 10, 2000, at about 8:00 p.m., Roman Nose and another Sherwood Home resident left Sherwood Home after being told that they did not have permission to leave. A Sherwood Home house parent followed Roman Nose and the other resident and indicated nonverbally that they were to return to Sherwood Home. The other resident returned shortly and reported that Roman Nose said that he would come home in a little while. Although Roman Nose occasionally left Sherwood Home without permission, he always returned and did not have a history of running away. Robert Ritter told the house parent to wait a while before calling the police to give Roman Nose an opportunity to return on his own. At about 11:00 p.m., because Roman Nose had not yet returned, the house parent called the police and reported that Roman Nose had run away.

Roman Nose spent that evening drinking beer, smoking marijuana, and using cocaine with Andrew Rieman and Jolene Stuedemann. Later that evening, Roman Nose sexually assaulted Stuedemann and then stabbed her multiple times with a screwdriver. *State v. Roman Nose*, 649 N.W.2d 815, 816–17 (Minn.2002). Roman Nose was convicted of first-degree murder

during the commission of criminal sexual conduct. *Id.* at 816.

Appellants James and Jeanne Stuedemann brought a negligence-based wrongful-death action against Roman Nose, R–Home, and the Ritters. They later amended their complaint, adding Flynn as a defendant. The Stuedemanns sought partial summary judgment "determining that as a matter of law [Roman Nose] murdered Jolene Stuedemann on July 11, 2000." R–Home, the Ritters, and Flynn (collectively referred to as "respondents") each sought summary judgment on the grounds that they did not owe Jolene Stuedemann a duty to control Roman Nose and that their allegedly negligent conduct was not the cause of Jolene Stuedemann's death. Flynn also argued that the Stuedemanns's affidavit disclosing the identity of their expert witness was untimely.

The district court concluded that, as a matter law, Roman Nose murdered Jolene Stuedemann; respondents did not have a duty to control Roman Nose; respondents' allegedly negligent conduct was not the proximate cause of Jolene Stuedemann's murder; and the Stuedemanns failed to disclose the identity of their expert witness by the deadline in the scheduling order. The district court granted respondents' motions for summary judgment and dismissed the wrongful-death claims against respondents. The Stuedemanns' appeal follows.

## ISSUES

1. **Did the district court err by granting respondents' motions for summary judgment?**

## ANALYSIS

■ The Stuedemanns argue that the district court erred by granting respondents' motions for summary judgment and dismissing their wrongful-death claims against respondents. Summary judgment is appropriate when, viewing the evidence in a light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03; *Stringer v. Minn. Vikings Football Club, LLC,* 705 N.W.2d 746, 753 (Minn.2005). We review de novo whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Meintsma v. Loram Maint. of Way, Inc.,* 684 N.W.2d 434, 438 (Minn.2004). We will not reweigh the facts or determine the credibility of affidavits and other evidence. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 70 (Minn.1997).

■ A plaintiff who alleges negligence in a wrongful-death action must prove that (1) the defendant had a duty, (2) the defendant breached that duty, (3) there was a death, and (4) the breach of duty caused the death. *Laska v. Anoka County,* 696 N.W.2d 133, 137 (Minn.App.2005), *review denied* (Minn. Aug. 16, 2005). If the record lacks proof of any of the elements of the negligence claim, the defendant is entitled to summary judgment. *Funchess v. Cecil Newman Corp.,* 632 N.W.2d 666, 672 (Minn.2001).

■ The Stuedemanns argue that R–Home, the Ritters, and Flynn had a duty to control Roman Nose to prevent him from causing bodily harm to others and that their failures to control Roman Nose caused Jolene Stuedemann's death. Whether a party has a duty is an issue for the courts to decide as a matter of law. *ServiceMaster of St. Cloud v. GAB Bus. Servs.,* 544 N.W.2d 302, 307 (Minn.1996).

■ There is no general duty to control the conduct of a third person to prevent him from causing physical harm to others. *Johnson v. State,* 553 N.W.2d 40, 49 (Minn.1996) (citing Restatement (Sec-

ond) of Torts § 315 (1965)). But certain special relationships exist that impose a duty to control the third person's conduct for the protection of others. *Id.* A person who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled has a duty to exercise reasonable care to control the third person to prevent him from doing such harm. *Id.* (citing Restatement (Second) of Torts § 319 (1965)). "Implicit in the duty to control is the ability to control." *Lundgren v. Fultz,* 354 N.W.2d 25, 27 (Minn.1984).

A duty arises under section 319 of the Restatement of Torts when a person knows of a third person's dangerous propensities and has the authority to control that person's conduct. *Rum River Lumber Co. v. State,* 282 N.W.2d 882, 887 (Minn.1979). It is undisputed that respondents were aware of Roman Nose's violent behavior, including the baseball-bat assault in June 1999 and the fork-throwing incident in May 2000. R–Home, the Ritters, and Flynn each had limited authority to set goals for Roman Nose and impose consequences for his inappropriate behavior. To the extent that they had the authority to control Roman Nose's behavior, the respondents had a duty to exercise that authority to prevent Roman Nose from engaging in violent conduct.

The Stuedemanns allege several duties that respondents had to control Roman Nose, including the duty to remove Roman Nose from the streets on July 10, 2000. But respondents did not have the authority to physically restrain Roman Nose from leaving Sherwood Home, nor could they force him to return after he had left. The rules governing group-home licensing when Roman Nose lived at Sherwood Home specifically prohibited such control of group-home residents. *See* Minn. R. 9545.0995 (1999); *see also* Minn.

Stat. § 144.651, subd. 31 (1998) (allowing physical restraint or isolation only in emergency situations and not for disciplinary purposes, to enforce program rules, or for the convenience of staff). At most, respondents had a duty to call the police and report Roman Nose as a runaway. Undisputed record evidence shows that the staff at Sherwood Home did call the police when Roman Nose did not return after a few hours. There was no breach of this duty, and we conclude that the respondents' conduct was not negligent.

The scope of the duty to control another's conduct is also limited by the foreseeability of the harm. *Lundgren,* 354 N.W.2d at 28. The test of foreseeability is whether a defendant was aware of facts suggesting that a plaintiff was being exposed to an unreasonable risk of harm. *Spitzak v. Hylands, Ltd.,* 500 N.W.2d 154, 158 (Minn.App.1993), *review denied* (Minn. July 15, 1993). "In determining whether a danger is foreseeable, courts look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." *Whiteford v. Yamaha Motor Corp.,* 582 N.W.2d 916, 918 (Minn. 1998).

The other duties that the Stuedemanns argue respondents had are the duties to (1) refuse to accept Roman Nose into Sherwood Home after the baseball-bat assault; (2) discharge Roman Nose to a higher-security facility; (3) enlist the assistance of the juvenile court; and (4) report that Roman Nose was not receiving counseling from Flynn when Flynn was ill in April 2000. None of these duties alleged by the Stuedemanns passes the foreseeability test. To hold that respondents had a duty to control Roman Nose by the methods proposed by the Stuedemanns, we must conclude that it was objectively reasonable to expect that Roman Nose

would murder Jolene Stuedemann on July 10, 2000, if he was not discharged to a higher-security facility, if the juvenile court was not more involved, or if it was not reported that Roman Nose was not receiving counseling from Flynn when Flynn was ill in April 2000. We are not prepared to do so. Jolene Stuedemann's murder is too remote in time from any possible breach of these alleged duties to be foreseeable.

■■■ The Stuedemanns also challenge the district court's conclusion that any alleged negligence of respondents was not the proximate cause of Jolene Stuedemann's death. The district court noted that despite the voluminous record developed by the Stuedemanns, questioning the propriety of Roman Nose's placement at Sherwood Home and the effectiveness of his treatment there, "[t]he proximate cause of [Jolene Stuedemann's] death was Tony Roman Nose." Generally, proximate cause is a question of fact for the jury. *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 115 (Minn.1992). But when reasonable minds can arrive at only one conclusion, proximate cause should be decided by the court as a matter of law. *Id.*

■■■ A person's negligent conduct is the proximate cause of another's injury if the negligent conduct is such that the person, in the exercise of ordinary care, ought to have anticipated that the conduct was likely to result in injury to others. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn.1995). The plaintiff must show that the defendant's "conduct was a substantial factor in bringing about the injury." *Flom v. Flom*, 291 N.W.2d 914, 917 (Minn.1980). When determining whether negligent conduct was the proximate cause of an injury, an unforeseeable criminal act by a third party serves as an intervening cause sufficient to break the chain of causation. *Hil-*

*ligoss v. Cross Cos.*, 304 Minn. 546, 547, 228 N.W.2d 585, 586 (1975).

It is undisputed that Roman Nose obtained and consumed drugs and alcohol several hours *after* he left Sherwood Home. Although respondents were aware of Roman Nose's violent behavior in Montana and at Sherwood Home, there is nothing in the record indicating that Roman Nose had ever engaged in violent behavior the previous times that he left Sherwood Home without permission. In light of Roman Nose's conduct after he left Sherwood Home, the allegedly negligent conduct by respondents was not a substantial factor in bringing about Jolene Stuedemann's death. Roman Nose's unforeseeable criminal behavior—the consumption of drugs and alcohol, the sexual assault, and the murder—was an independent intervening cause resulting in Jolene Stuedemann's death. We conclude that respondents' conduct was not the proximate cause of Jolene Stuedemann's death.

We understand that Roman Nose caused the Stuedemanns tremendous grief and that the void left by their daughter's tragic murder will never be filled. But there are limits on how far courts can stretch one person's injuries to another person's liability. We conclude that that the scope of respondents' duty to control Roman Nose extends only as far as their authority and is limited by the unforseeability of Jolene Stuedemann's murder. Respondents could not have foreseen the horrendous events that unfolded on July 10, 2000. We cannot hold them liable for Roman Nose's criminal conduct.

The Stuedemanns also challenge the district court's dismissal of their complaint against Flynn because their affidavit disclosing the identity of their expert witness was untimely. Because we conclude that the district court did not err by granting Flynn's motion for summary judgment on

the merits of the case, we need not address this issue.

## DECISION

Respondents' duty to control Roman Nose is limited to conduct within their authority. Respondents' conduct was not negligent. Because Roman Nose's criminal conduct was an unforeseeable intervening cause, as a matter of law respondents' allegedly negligent actions were not the proximate cause of Jolene Stuedemann's death.

**Affirmed.**