*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0667

Simon Tharek Duoth, as Trustee and Next of Kin,
Taban Tharek,
Appellant,

vs.

Steven Mark Wood,
Respondent.

**Filed January 16, 2024**
**Reversed and remanded**
**Bratvold, Judge**

Benton County District Court
File No. 05-CV-22-296

Jacob M. Birkholz, Michelle K. Olsen, Birkholz & Associates, LLC, Mankato, Minnesota (for appellant)

Jessie L. Sogge, Cally Kjellberg-Nelson, Quinlivan & Hughes, P.A., St. Cloud, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Bratvold, Judge; and Schmidt, Judge.

## NONPRECEDENTIAL OPINION

**BRATVOLD**, Judge

Appellant challenges the district court's summary-judgment dismissal of his wrongful-death action for damages, claiming that respondent driver negligently struck and killed appellant's son. Appellant argues that, when the facts are viewed in the light most

favorable to him as the nonmoving party, genuine issues of material fact preclude summary judgment. Because we conclude that the moving party was not entitled to judgment as a matter of law, we reverse and remand for further proceedings.

## FACTS

On March 26, 2021, appellant Simon Tharek Duoth (Duoth) sued respondent Steven Mark Wood, alleging that Wood's negligent driving caused the death of Duoth's son, Taban Tharek (Tharek). The following summarizes the material facts in a light favorable to Duoth as the nonmoving party.

On December 22, 2018, Wood visited his son and daughter-in-law at their home in West St. Cloud. Wood ate dinner, had one beer, and around 7:00 p.m., dropped off his son and daughter-in-law at Rollie's Rednecks and Longnecks bar, which is along Highway 23 near St. Cloud. Wood returned to his son's home and had one "Jim Beam [whiskey] and water" at 9:00 p.m. Just before midnight, Wood returned to Rollie's and picked up his son and daughter-in-law.

Wood drove his jeep westbound on Highway 23 in the right lane. Highway 23 has two westbound lanes, each 12 feet wide, with an 11-foot paved shoulder along the outside lane. The posted speed limit is 65 miles per hour. No streetlights illuminate the highway in the relevant section. Wood's son sat in the front, and his daughter-in-law was in the back. "[S]ome light snow" was falling, the "road conditions were wet and there was snow on the shoulder." Wood estimated his speed to be "between 40 and 50 miles per hour."

Around 12:15 a.m. on December 23, Wood's jeep struck Tharek, who was walking. Tharek was wearing a black jacket, khaki-colored pants, and white tennis shoes.

Wood testified in his deposition that Tharek appeared "sudden[ly]" about "10 or 15 feet" in front of Wood's "right front tire." Wood did not maneuver to avoid Tharek. Wood's son told police that, "all of a sudden," Tharek was "in the front right side of the vehicle" and that Wood did not apply his brakes. Wood's daughter-in-law did not see Tharek before the collision.

Wood testified that he "pulled over to the shoulder of the road," his son "got out to go render aid" to Tharek, and Wood called the police. They moved Tharek "off to the shoulder." The collision damaged Wood's front windshield on the passenger side.

Around 12:30 a.m., law enforcement arrived. A Minnesota State Patrol trooper observed "one of [Tharek's] shoes" and "some debris from [Wood's] vehicle . . . in the westbound lane." The trooper spoke with Wood and observed no signs of impairment from alcohol; Wood took a preliminary breath test. Emergency responders transported Tharek to a nearby hospital; he died of his injuries.

A second trooper observed "footprints [in the snow] leading away from [Tharek's stalled] vehicle towards where the crash had occurred." Tharek's stalled vehicle was "parked on the shoulder" of Highway 23 about one-quarter mile west of the collision site. A lieutenant assisted at the scene, which included measuring and mapping the collision.

Two months after the collision, in February 2019, another Minnesota State Patrol trooper, Kyle Backer, "recreated the conditions of the motor vehicle crash" to "determine the available distance when the pedestrian could first reasonably be detected." Backer used Wood's jeep with "low-beam headlights," and he and Wood served as "test driver[s]." The test drivers "approached the pedestrian surrogate . . . and stop[ped] the vehicle" when they

3

first "discerned" the pedestrian. "The distance between the front of the stopped vehicle and the pedestrian surrogate was then documented" and adjusted "to accommodate the additional complexities facing a real driver." Backer also "calculated the required distances [Wood's] vehicle needed" to "brak[e] to a complete stop" to avoid the pedestrian when traveling at either 50 or 65 miles per hour.

Backer prepared a "crash reconstruction report" in which he concluded that Wood did not have enough distance to "perceive the [pedestrian], respond, and complete an effective evasive action," and thus, "the collision could not be deemed preventable." The report stated that drivers traveling over 31 miles per hour "are most likely . . . overdriving the illumination capabilities of their headlamps for pedestrian encounters on unlit highways." Backer's report concluded that the "[p]rimary contributing factor" in the collision was Tharek "walking on the roadway without consideration to the right of way of oncoming traffic."[1]

Duoth brought a wrongful-death action against Wood in March 2021. Duoth hired Daniel Lofgren, an accident-reconstruction expert, who prepared a report dated September 2021. Lofgren's report noted that Backer's report was "unable to positively identify an area of impact due to a lack of physical evidence," and therefore, Backer's conclusion that Tharek "was walking on the roadway in the traffic lane" at the time of the collision "is

---

[1] We note that the record contains troubling comments, including Backer's conclusion that Tharek was walking on the roadway "without consideration" for oncoming traffic. In addition, Wood's son, a law-enforcement officer whom the responding officers "[p]ossibly" knew, stated that the collision occurred in "the middle of the night" and that Tharek "was wearing dark clothing with his hood up" and was "a darker-skinned male."

4

based solely on the statement from driver Steven Wood." Lofgren concluded that "the available physical evidence shows Mr. Tharek was walking on the north shoulder" of Highway 23, "[t]here is no physical evidence he came off the shoulder," and "[t]here is insufficient physical evidence available to show precisely where Mr. Tharek was when he was hit."

In December 2022, Wood moved for summary judgment, arguing that "[t]he record provides no admissible evidence tending to establish the breach and causation elements of Duoth's negligence-based wrongful death claim."[2] Wood argued that "[t]he only way . . . Duoth can prove" Wood's negligence is to "establish that the impact occurred on the shoulder through expert evidence" and that "[a]ll the available and admissible evidence is that . . . Wood was lawfully operating [his] vehicle in the westbound lane of highway 23" at the time of the collision. Further, Wood argued that even if he was driving on the shoulder, "Backer's visibility study fail[s] to provide any jury with a basis for finding that Steven Wood's driving conduct caused the collision."

Duoth opposed summary judgment. Duoth argued that "experts are not required" for a jury to determine whether "a driver on a public roadway was negligent" and, regardless, that Lofgren's expert report "creates a genuine issue of material fact" as to

---

[2] The record on summary judgment included Wood's deposition along with the depositions of Backer and the two troopers and lieutenant who responded to the collision scene. Additionally, the record contained the following reports: Backer's report, Lofgren's report, and a report from Wood's expert, which concluded that "the available evidence" showed "the collision . . . occurred within the westbound travel lanes."

5

Tharek's location at the time of the collision. Duoth also argued that "even if Tharek was negligent by being in the road, [Wood] still failed to drive with due care."

After a hearing, the district court granted Wood's motion for summary judgment in April 2023. The district court's memorandum first noted that there is "no eyewitness testimony placing the decedent's location at the time of the collision, other than [Wood's] statement that the decedent was in the lane of traffic," and therefore, "the only available means of proving [Wood's] negligence is through circumstantial evidence supported by expert opinion." The district court then determined that Lofgren's expert opinion was "speculative" because he "did not provide any evidence to support his conclusion that Mr. Tharek was walking on the north shoulder at the time of the accident."

The district court reasoned that "[t]he issues of duty and breach turn on whether Mr. Tharek was in the roadway at the time of the accident." The district court determined that "all the evidence in the record indicates that [Tharek] was walking in the traffic lane." The district court also determined that Duoth failed to produce evidence that Wood "had sufficient time to avoid the collision after he observed Mr. Tharek." The district court concluded that "no evidence in the record" supported Duoth's claim "that [Wood] breached a duty of care."

Duoth appeals.

## DECISION

Summary judgment "is appropriate when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law." *Warren v. Dinter*, 926 N.W.2d 370, 374 (Minn. 2019) (quotation omitted). Appellate courts review a grant of summary

judgment de novo, viewing "the evidence in the light most favorable to the nonmoving party" and resolving "all doubts and factual inferences against the moving part[y]." *Fenrich v. The Blake School*, 920 N.W.2d 195, 201 (Minn. 2018) (quotation omitted). A court considering a motion for summary judgment "must not weigh facts." *Senogles ex rel. Kihega v. Carlson*, 902 N.W.2d 38, 42 (Minn. 2017) (quotation omitted).

"Generally, negligence claims present questions of fact not susceptible to summary adjudication." *Blatz v. Allina Health Sys.*, 622 N.W.2d 376, 383 (Minn. App. 2001), *rev. denied* (Minn. May 16, 2001); *accord Canada by Landy v. McCarthy*, 567 N.W.2d 496, 505 (Minn. 1997). *But see Nelson v. Holand*, 139 N.W.2d 518, 521 (Minn. 1965) ("[I]t is only where different minds can reasonably arrive at only one result that the fact issues become questions of law . . . ."). The supreme court "has repeatedly held that the issue of negligence is a question of fact to be resolved by the jury." *Fiwka v. Johannes*, 177 N.W.2d 782, 783 (Minn. 1970). And this court has stated that in negligence cases, "[b]reach and causation are questions of fact." *Woehrle v. City of Mankato*, 647 N.W.2d 549, 551 (Minn. App. 2002), *rev. denied* (Minn. Sept. 17, 2002).

Duoth's complaint alleged that Wood's negligent driving caused Tharek's death. "A plaintiff who alleges negligence in a wrongful-death action must prove that (1) the defendant had a duty, (2) the defendant breached that duty, (3) there was a death, and (4) the breach of duty caused the death." *Stuedemann v. Roman Nose*, 713 N.W.2d 79, 83 (Minn. App. 2006), *rev. denied* (Minn. July 19, 2006). Where "the record lacks proof of any of the elements of the negligence claim, the defendant is entitled to summary judgment." *Id.*

7

The district court granted summary judgment for Wood based on its determination that Duoth failed on the second element because he could not show that Wood "breached a duty of care." In his brief to this court, Duoth argues that the district court improperly ignored evidence favorable to Duoth in deciding that the collision occurred in the roadway and "weighed the . . . evidence on exactly where the point of impact was and whether Tharek was in the roadway." Duoth also argues that even if Tharek was in the roadway at the time of the collision, there is a genuine dispute of material fact as to whether Wood "violated his duty to maintain a proper lookout and due care for a pedestrian in the roadway." We consider both of Duoth's arguments.

## A.    A genuine issue of material fact about Tharek's location at the time of the collision precludes summary judgment.

Duoth contends that the record evidence creates a genuine issue of material fact about Tharek's location at the time of the collision because (1) deposition testimony, viewed favorably to Duoth, shows that Tharek was walking on the shoulder and (2) the district court improperly discredited Lofgren's expert opinion. Each point is addressed in turn.

### 1.    Deposition Testimony

Duoth argues that there are "disputed material facts and evidence" regarding "whether [Tharek] was in the roadway" at the time of the collision. Duoth contends that the "testimony of [the second trooper] . . . put the footprints of Decedent Mr. Tharek on the shoulder" and that "there was no evidence of Tharek's footprints on the roadway" because the first trooper "saw footprints but did not link them to Decedent Tharek." Wood

8

disagrees, arguing that summary judgment was proper because "[a]ll the evidence in the record indicates Tharek was walking in the traffic lane at the time of the collision."

We begin by noting the evidence discussed in the district court's memorandum. The district court noted that in Wood's "answer and during his statement to police at the scene," Wood "asserted that he observed [Tharek] walking in the traffic lane immediately before the impact" and that Tharek was "right in the middle of the lane." The district court added that Wood's statements were "supported by the physical evidence at the scene, the officer's observations and accident reconstruction efforts." The district court pointed out that "[a]ccording to officer[] observations, a shoe found in the traveled roadway matched the tread pattern and size of footprints in the snowy portion of the traffic lane near the spot where [Tharek's] body was" found, and "a cell phone was also found in the roadway." The district court stated that the first trooper "testified that he observed footprints matching [Tharek's] showing he was walking eastbound in the westbound lane of traffic prior to the collision." Finally, the district court noted Backer's testimony "that he was able to find enough evidence based on his crash reconstruction work to form the opinion that Mr. Tharek 'was in the traffic lane and not on the shoulder.'"

We agree with Duoth that the deposition testimony includes evidence about Tharek's location that is favorable to Duoth's case. For example, the lieutenant testified that he observed "footprints on the shoulder, which appeared to be from a pedestrian, [that] led back to a parked vehicle" that was "driven by Mr. Tharek." The lieutenant testified that "the road conditions were wet . . . [s]o that would prohibit [him] from seeing any footprints on the lane of traffic." Also, in response to questioning during his deposition, Backer

9

testified that there was no physical evidence that Tharek's footprints entered the right lane of traffic.

The district court appears to have improperly credited or weighed the first trooper's testimony that he saw footprints in the roadway "from blowing snow" as more convincing. *See Senogles*, 902 N.W.2d at 42 (stating that the district court cannot weigh facts on summary judgment). Further, the district court summarized the first trooper's testimony as stating that he saw "footprints matching" Tharek's in the roadway. To the contrary, the first trooper testified that he "didn't take [Tharek's] shoe or match it or anything with the footprints in the snow." Moreover, the first trooper testified that when he arrived, there were "[t]en to fifteen" emergency personnel already on scene and there were many other footprints around "where [Tharek] was laying on the shoulder."[3]

In short, the district court's summary-judgment decision rested on its conclusion that Tharek was walking in the roadway, and this conclusion is undermined by deposition testimony favorable to Duoth. Thus, we conclude that a genuine dispute of material fact as to Tharek's location at the time he was struck by Wood's jeep precludes summary judgment.

---

[3] The district court accurately noted that the responding officers found Tharek's shoe and a cell phone in the roadway. But the district court failed to mention Backer's report, which stated that "debris from a pedestrian/motor vehicle crash is often beyond the area of impact." Indeed, Backer's report concluded that he "did not locate any evidence that positively identified the area of impact."

### 2. Lofgren's Report

For the sake of completeness and to guide the parties on remand, we also consider Duoth's arguments about Lofgren's expert report. Duoth first argues that the district court erred when it "improperly suggest[ed] that expert testimony is required to prove circumstantial negligence." Duoth urges that expert testimony is not required for matters of common knowledge, and here, "[a] jury of ordinary persons" could "determine if a driver on a public roadway was negligent."

The district court's summary-judgment order stated that "[w]hile expert testimony is not required in every case, in this case there appears to be no eyewitness testimony placing [Tharek's] location at the time of the collision, other than [Wood's] statement that [Tharek] was in the lane of traffic." As such, the district court determined that "the only available means of proving negligence is through circumstantial evidence supported by expert opinion."

But "expert testimony is not necessary where the matters to be proved fall within an area of common knowledge." *Hestbeck v. Hennepin County*, 212 N.W.2d 361, 364 (Minn. 1973). For example, some aspects of driving are common knowledge. *See, e.g.*, *Schleuder v. Soltow*, 59 N.W.2d 320, 324 (Minn. 1953) (stating "[i]t is a matter of common knowledge" that it is hazardous for a driver not to "respect the right of way"). The jury may rely on "[l]ife experience and common sense . . . to draw reasonable inferences when making a decision" regarding a defendant's negligence. *Staub v. Myrtle Lake Resort, LLC*, 964 N.W.2d 613, 625 (Minn. 2021).

11

In this case, Duoth advances several theories of negligence, including "whether Wood had the opportunity to hit his brakes," whether Wood "was over-driving his headlights," and, implicitly, whether Wood was driving on the shoulder at the time he hit Tharek. Because some of Duoth's negligence theories involve common knowledge about driving and reasonable inferences from eyewitness testimony and physical evidence—such as Tharek's path based on footprints in the snow—the district court erred by reasoning that Duoth needed an expert to prove Tharek's location at the time of the collision.

Second, Duoth argues that the district court erroneously "discredited" Lofgren's opinion about Tharek's location as "speculative." Wood responds that "[t]he location of Tharek is critical in this case and does require an expert opinion" and that Duoth "offers nothing more than a speculative expert opinion to argue Tharek was not in the roadway at the time of the collision." The district court stated that Lofgren's opinion "is that [Tharek] was walking on the shoulder of the highway *when struck*" and that the opinion is "speculative" because Lofgren "did not provide any evidence to support" it. (Emphasis added.)

But Lofgren never opined as to Tharek's location *at the time of the collision*. Rather, Lofgren's report stated that "[t]here is insufficient physical evidence" regarding Tharek's location at the time of the collision. Lofgren reasoned that "[t]he only physical evidence shows Mr. Tharek was walking on the shoulder," but officers "were not able to see or follow [Tharek's] footprints all the way to the area of impact."[4] Because the district court

---

[4] Lofgren's report was completed before depositions were taken and appears to have relied on the lieutenant's field report, which stated that the second responding trooper "followed

appears to have misunderstood Lofgren's report and erred by assuming expert evidence was necessary to survive summary judgment for matters of common knowledge, the district court erred in its analysis of the evidence in granting summary judgment for Wood.

In sum, we conclude that the record contains conflicting evidence as to Tharek's location at the time of the collision, some of which allows for the inference that Tharek was walking on the shoulder when Wood's jeep struck him. Thus, the district court erred in concluding that "[t]he undisputed evidence, when viewed in the light most favorable to [Duoth], does not show [Wood] breached his duty to operate his vehicle in a reasonable manner" and "shows that Mr. Tharek was walking . . . in the right travel lane."

Because the record evidence creates a genuine dispute of material fact regarding Tharek's location at the time of the collision, granting summary judgment was improper. *See Warren*, 926 N.W.2d at 375 (stating that "summary judgment is inappropriate when reasonable persons might draw different conclusions from the evidence presented" (quotation omitted)).

**B.     A genuine issue of material fact precludes summary judgment, even if we assume Tharek was in the roadway at the time of the collision.**

Duoth argues that regardless of Tharek's location at the time he was hit, there is a genuine dispute of material fact as to whether Wood "violated his duty to maintain a proper lookout . . . for a pedestrian in the roadway." For example, Duoth contends that Wood was

---

a set of footprint[s] on the shoulder that were coming from the west" and that the prints "matched [Tharek's] shoe tread design that was found on the scene." We acknowledge that at the second trooper's deposition, he testified that he could not remember where Tharek's footprints were in relation to the roadway.

negligent in "over-driving his headlights" and failing to "avoid or maneuver in such a manner such to avoid the collision." Wood argues that Duoth "must do more than simply speculate that the use of high beams may have changed the outcome" and that Duoth's arguments are "contrary to the evidence on the record, primarily . . . Backer's conclusion that the collision was not preventable."

The district court determined that Wood "did not have enough time to react or take any avoidance measures to avoid hitting Mr. Tharek in the roadway." The district court stated that Duoth "has not pointed to any evidence showing that [Wood's] use of high beams would have allowed additional time for avoidance measures."[5] The district court added that, based on Backer's report, the collision was not preventable because there was not "sufficient distance for a driver to stop or avoid a collision [with a pedestrian] at highway speeds."

First, Wood owed Tharek a duty of care even if Tharek was walking in the roadway. All drivers have a duty to drive with due care, including traveling at a speed "reasonable and prudent under the conditions," avoiding collisions with persons or vehicles, and "remaining aware of actual and potential hazards." Minn. Stat. § 169.14, subd. 1 (2022); *see, e.g.*, *Kachman by Kachman v. Blosberg*, 87 N.W.2d 687, 693, 696 (Minn. 1958) (affirming judgment after concluding that negligence was a factual issue for the jury when a child was hit while crossing the highway without yielding to oncoming traffic).

---

[5] The district court noted that while Minnesota law provides that a "driver shall use a distribution of light, or composite beam, directed high enough and of sufficient intensity to reveal persons and vehicles at a safe distance," it does not mandate the use of high beams. Minn. Stat. § 169.61(a) (2022).

In its order granting summary judgment for Wood, the district court implied otherwise when it stated that "[t]he issues of duty and breach turn on whether Mr. Tharek was in the roadway at the time of the accident" or "on the shoulder" and asked, "[i]f Mr. Tharek was walking on the *shoulder* of the highway, did [Wood] breach his duty to exercise reasonable care in operating his vehicle[?]" (Emphasis added.) But the district court also stated that Wood "had a duty to operate his vehicle on public roads in a reasonable manner as to not injure others who were lawfully on the roads, including Mr. Tharek," citing *Fisher v. Edberg*, 176 N.W.2d 897, 902 (Minn. 1970). To be clear, even if Tharek was in the roadway at the time he was hit, Wood may have breached a duty of care.

Second, record evidence does not support the determination, at this stage of the proceedings, that the collision was not preventable. It is accurate to say that Backer concluded "the collision could not be deemed preventable."[6] But, for the reasons explained, the record evidence creates a genuine issue of material fact about whether Wood breached his duty of care when he hit Tharek.

---

[6] We note that Duoth criticized Backer's crash-reconstruction study, which was conducted using only low-beam headlights and considered "only braking to a complete stop as the avoidance action." Also, some evidence in Backer's report favors Duoth's position that Wood breached his duty of care. For example, Backer noted that drivers traveling above 31 miles per hour "are most likely to be overdriving the illumination capabilities of their headlamps for pedestrian encounters on unlit highways" and that, when using low-beam headlights, "the posted speed limit on most sections of highway in North America would be too high to permit collision avoidance . . . if a pedestrian were encountered." While the district court concluded that this evidence about headlights was a "broad generalization[] . . . insufficient to establish a duty to use high beams or a breach thereof in this case," this conclusion cannot support summary judgment. The district court cannot weigh evidence in considering a motion for summary judgment. *See Senogles*, 902 N.W.2d at 42.

We therefore conclude that, even if Tharek was in the roadway at the time Wood struck him, a genuine issue of material fact exists as to whether Wood breached a duty of care, and summary judgment on this issue was improper.

**Reversed and remanded.**