# CLARA KOVAL, TRUSTEE FOR HEIRS OF FRANK KOVAL, v. DONALD THOMPSON.

136 N. W. (2d) 789.

July 30, 1965—No. 39,405.

*Bradford & Kennedy,* for appellant.

*Gordon Rosenmeier* and *John E. Simonett,* for respondent.

ROGOSHESKE, JUSTICE.

After a verdict for defendant in an action for wrongful death, plaintiff appeals from an order denying a new trial.

The issues raised all pertain to plaintiff's claim that the court did not properly submit the case to the jury.

Decedent's death resulted from a collision between his 1956 Ford pick-up truck, which he was driving, and a Ford 2-ton milk truck, driven by defendant. They collided between 11 and 12 o'clock in the forenoon of August 29, 1961, a clear day, at an unmarked intersection of two rural gravel roads. Both roads were straight and level and there was no other traffic upon them at the time. Immediately before the collision, decedent, aged 65, was driving east on a 19-foot-wide township road. Defendant, aged 28, was driving north on a 23-foot-wide county road, approaching

the intersection from decedent's right. The view each driver had across the southwest corner of the intersection was partially obscured by brush approximately 20 feet high and located about 100 to 125 feet from the traveled portions of the roadways. The point of impact was east of the center of the intersection, the milk truck striking the right front side of the pickup, damaging it from the door of the cab to the front end. After impact, the vehicles remained upright and came to rest in a ditch northeast of the intersection with the right front end of the pickup lying over the left front fender and wheel of the milk truck. The distance from the rear of the milk truck to the center of the intersection measured 57 feet.

Defendant, a self-employed trucker, spent the morning making his regular round of milk collections at farms in the locality. He had delivered his milk to the creamery and was proceeding north on the county road to his home, located half a mile north of the intersection. Decedent, on the morning of the accident, had been in the village of Eagle Bend, where he had stopped at the municipal bar and liquor store at about 9:30. A normally genial and garrulous man, decedent had talked loudly and playfully mauled a friend of his. In the opinion of the friend and the bartender, decedent was intoxicated. When the bartender refused to sell him a drink, he left the bar after being there no more than 10 minutes. Around 11 o'clock, a barber in Eagle Bend and his customer saw decedent walk across the street, "very unbalanced, a stagger," carrying a paper-wrapped package. They observed him board his truck and drive off. After the collision, a brown paper sack containing two shattered pint whisky bottles was found just to the rear of the pickup, one with the seal intact and one with the seal broken.

The foregoing appears without dispute in the record before us. Plaintiff's theory of liability is predicated upon defendant's admission to witnesses appearing on the scene after the collision and his testimony in accord with the above facts.

The sheriff and his deputy investigated. They found skid marks left by defendant's truck which, by measurement, extended 201 feet south from the center of the intersection. They also testified that defendant admitted his speed at impact to be about 40 miles per hour. A witness for plaintiff working nearby heard the crash and immediately went to the scene. When

asked what defendant told him, he testified, "He said it served him [decedent] right for driving out in front of him." Tending to conflict with the inferences to be drawn from the testimony of those witnesses, defendant testified that because of the obstructions to his view he first saw decedent's pickup to his left when it was "approximately" 100 feet west of the intersection and traveling at about 10 to 20 miles per hour. At that time, he stated, he was "approximately" 150 feet south of the intersection, traveling at about 30 to 40 miles per hour. When the pickup became visible to him, he was uncertain whether it was going to yield the right-of-way. As he approached, he "assumed" decedent was going to stop "because I had the right-of-way." Being well acquainted with the area and realizing decedent was in a "position of danger," he started to slow down, during which time he traveled three to four truck lengths and observed the pickup continuing without altering its course or speed. "Then in a split second I realized that he was not going to stop," defendant declared, and "I applied the brakes and swerved to the right," intending, he explained, to take to the ditch to avoid a collision. Just before impact, defendant testified that he saw decedent "slumped over the wheel" and looking "[s]traight ahead."

On this record, plaintiff contends that the court erred (1) in refusing to submit plaintiff's requested instruction incorporating the doctrine of discovered peril; [1] (2) in submitting the defense of assumption of risk; and (3) in improperly instructing on right-of-way, speed, and driving under the influence of intoxicating liquor. All such instructions, plaintiff argues, were "an unconnected gathering of abstract rules" which, "taken as a whole, did not, with required and reasonable clarity and completeness, convey to the jury a correct understanding of the issues involved, and the controlling principles of law which applied."

■ In an action based on negligence, the doctrine of discovered peril

---

[1] Plaintiff's request was, in form, Instruction 126, Minnesota Jury Instruction Guides: "If you find defendant negligent and also find that plaintiff by his own negligence placed himself in a position of danger, you may nevertheless find for plaintiff if you find that:

"1.   Defendant had actual knowledge of plaintiff's dangerous position; and

"2.   After discovering plaintiff's dangerous position defendant by the use of reasonable care could have avoided the (accident) (collision)."

or that portion of the "last clear chance" rule which deals with conscious disregard of danger (sometimes misnamed the doctrine of "willful and wanton negligence") can operate to relieve a plaintiff of the bar of his contributory negligence when defendant, discovering plaintiff in a position of danger, fails to use reasonable care to avoid injuring him.[2] Under our cases, the doctrine cannot be applied unless it is established that plaintiff's negligence preceded that of defendant as distinguished from operating contemporaneously therewith (Fonda v. St. Paul City Ry. Co. 71 Minn. 438, 74 N. W. 166); that defendant had actual knowledge of plaintiff's dangerous position in the sense that defendant realized plaintiff's predicament (Carlson v. Sanitary Farm Dairies, Inc. 200 Minn. 177, 273 N. W. 665); and after such realization, had sufficient time and the then-existing ability to avoid the collision. Westerberg v. Motor Truck Service Co. 158 Minn. 202, 197 N. W. 98.

In our opinion, the most favorable inferences drawn from the evidence do not provide a sufficient evidentiary basis to invoke the doctrine. At best, just before the impact defendant discovered decedent slumped over the wheel looking straight ahead and therefore inferred that he was not going to yield, and only then did he realize that decedent was in a position of peril. Defendant was not immediately aware of decedent's intoxication, but rather had the right to assume, until his discovery just before impact, that decedent would yield the right-of-way as required. By law, both as to time and distance, defendant's discovery came too late to take any successful action to avoid the collision. As a matter of law, defendant's instantaneous reaction constituted reasonable care under the circumstances.[3]

■ We have carefully examined plaintiff's other assignments with respect to the court's instructions and are not persuaded that the errors

---

[2] Restatement, Torts, § 480; 24 Minn. L. Rev. 81.

[3] We note that even the "last clear chance" doctrine, more favorable to the plaintiff because it includes not only our doctrine of discovered peril but also applies in some cases when defendant is negligently inattentive of the plaintiff's peril, would not be applicable here. Courts very rarely hold that the defendant is liable because he should have perceived that the plaintiff was negligently inattentive. See, Prosser, Torts (3 ed.) § 65.

complained of are such as would warrant a new trial. The court's instructions with respect to assumption of risk amounted to no more than a one-sentence definition of the phrase as a part of the defense of contributory negligence. It was not given as a separate, independent defense. From all that is apparent, in context it could be taken to mean that decedent assumed the risk by not looking to the right and by proceeding with unabated speed into the intersection. Thus, it would be contributory negligence by an inaccurate label. While it is true there was no evidentiary support to justify such instruction as a separate defense and a definition of the phrase was unnecessary, we cannot believe that the jury was misled thereby or that plaintiff suffered any prejudice.

We agree that plaintiff is justified in finding fault with the charge as a whole, because it does not, as it should, focus the attention of the jury on the critical issues and state the rules of law applicable in logical sequence. However, we are not moved to grant a new trial, since a review of the record does not reveal demonstrable prejudice. The trial involved a rather common type of motor vehicle collision. The testimony was not difficult to understand, and the issues naturally created were simple and well defined. The case was well tried by counsel, and there is little doubt that the jury understood the claims and contentions of each party and was able to separate and apply the abstract legal principles contained in the charge. We must view the charge in a practical way in the terms of its impact upon the whole conduct of the trial. Since no purpose would be served in discussing each of plaintiff's complaints, we conclude that the charge in this case did not contain prejudicial errors and that, by reason of the uncomplicated nature of the facts and the law and the manner in which the case was tried, the charge was adequate. Indeed, counsel's objections at trial did not indicate that he was concerned with its clarity at a time when any inaccuracies might have been corrected. In the absence of a sufficient showing that the jury failed to understand, consider, and properly resolve the critical issues, the dispute should be set to rest.

Affirmed.