Amanda Joe Carlson SENOGLES, as parent and guardian of Shungmanitou Washtay Kihega, a minor, Appellant,

v.

Peter CARLSON, Respondent.

A15-2039

Supreme Court of Minnesota.

Filed: September 27, 2017

Court of Appeals

Rhett A. McSweeney, David M. Langevin, Mark J. Brandenburger, McSweeney/Langevin LLC, Minneapolis, Minnesota, for appellant.

Kevin F. Gray, Matthew W. Moehrle, Rajkowski Hansmeier, Ltd., Saint Cloud, Minnesota, for respondent.

James S. Ballentine, Matthew J. Barber, Schwebel, Goetz & Sieben, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Association for Justice.

William L. Davidson, Timothy O'Connor, João C. Medeiros, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

LILLEHAUG, Justice

## OPINION

A 4-year-old boy, Shungmanitou Washtay Kihega ("Shawn"), wandered off during a family party on respondent Peter Carlson's property. Shawn's relatives found him face down in the Mississippi River. Shawn was revived, but he suffered severe brain damage from the near-drowning. Appellant Amanda Senogles, as parent and guardian of Shawn, filed this lawsuit against Carlson, alleging that, as the landowner, he violated his duty of care to his invitee, Shawn. The district court granted Carlson's motion for summary judgment and the court of appeals affirmed. Because summary judgment should have been denied, we reverse and remand.

## FACTS

On August 23, 2013, Senogles left her children, Shawn (4 years old), and Bear (3 years old), with her mother L.L. for the weekend. The next day, L.L. took the children to a family party held outdoors at Carlson's house in celebration of a relative's birthday. Carlson was Shawn's and Bear's great-uncle. Carlson's property featured about 76 feet of rocky shoreline on the Mississippi River.

It was a hot summer day. At the time of the party, the temperature was approximately 90 degrees. After arriving at the party, Shawn and several other children wanted to go swimming in the river. Shawn first asked his great-aunt, K.A., to take him swimming, but K.A. was busy "set[ting] up" for the party. Shawn waited on the steps with L.L. for 5 to 10 minutes until his great-uncle Paul Carlson agreed to take Shawn swimming.[1] Another relative, K.R., asked several other adults to go down to the river with her to watch the children. In all, there were about six adults and six to nine children in or near the river. Even though Carlson owned several life jackets, he did not make them avail-

---

1. L.L. never went down to the river because she was experiencing pain from a medical condition.

able to his guests and nobody wore one, although there might have been some foam flotation tubes known as "noodles" at the river.

After about 20 minutes, everybody (including Shawn) left the river because it was time to eat. K.A. told the children that swimming was over, at least for now. The swimming party dispersed. Shawn remained in his swimwear. Some children played yard games and others, including Shawn, played basketball.[2]

About 10 minutes after the children left the water, the family realized that Shawn was missing. The family began searching for Shawn and within 3 minutes found him lying face down in the river. Family members were able to resuscitate Shawn, but he suffered severe brain damage.

Senogles, as Shawn's parent and guardian, sued Carlson, alleging that Carlson breached his duty of care as a landowner to his invited guest, because he failed to prevent Shawn's access to the river, failed to supervise Shawn, failed to have a safety plan for the child guests, and failed to warn Shawn of the foreseeable dangers on the property.[3] Carlson moved for summary judgment, arguing that he did not owe a duty to Shawn because the danger of the

river was obvious to a 4-year-old child, and, in any event, the injury was not foreseeable.

On the motion for summary judgment, most of the facts were undisputed with the exception of Shawn's prior swimming experience. Senogles acknowledged that Shawn swam once at a pool and another time at a water park, but asserted that he "had no experience around lakes or rivers" before the day in question. Carlson asserted that Shawn had "experience around lakes and rivers before the party."[4] The parties agreed that Shawn never had formal swimming lessons.

The district court granted Carlson's motion for summary judgment on the ground that the harm to Shawn was not foreseeable to Carlson. The court of appeals affirmed the grant of summary judgment on a different ground: that Carlson was not liable because the danger was "obvious" to Shawn. The court of appeals did not reach the issue of the foreseeability of the danger.

## ANALYSIS

■ This case involves an appeal from an order granting summary judgment in favor of the landowner on a claim of negli-

---

**2.** Part of Carlson's property is enclosed with a fence. The children played lawn games and basketball outside the fence. It is undisputed that the children had ready access to the river.

**3.** Senogles also alleged that Carlson owed Shawn a duty because there was a special relationship between Shawn and Carlson. The court of appeals affirmed the district court's decision granting summary judgment on this argument. *Senogles v. Carlson*, No. A15-2039, 2016 WL 3659314, at *4-5 (Minn. App. July 11, 2016). We did not grant review on this issue.

**4.** The dissent posits, "Senogles did not argue before the district court that Shawn's experience with water was a genuine issue of mate-

rial fact." But in Senogles' responsive brief to Carlson's motion for summary judgment, she listed the facts of the case, including:

> 20. Shawn and Bear had no experience around lakes or rivers and had not had any formal swimming lessons or water safety training. (AJCS Dep. 10:12-14 & 10:15-16, Exhibit U).

Plainly, Senogles considered the fact of Shawn's inexperience with lakes and rivers to be material. Although she did not list it in her section of "material facts in dispute," Carlson considered the fact to be material and directly disputed it on page 2 of his reply brief. Therefore, on Carlson's motion for summary judgment, the parties disputed a material fact: Shawn's experience with lakes and rivers.

gence. Summary judgment is appropriate when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. "We review a district court's grant of summary judgment to determine whether there are any genuine issues of material fact and whether the court erred in its application of the law." *Louis v. Louis*, 636 N.W.2d 314, 318 (Minn. 2001).

We view the evidence in the light most favorable to the party against whom summary judgment was granted. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). Any doubt regarding the existence of a material fact is resolved in favor of that party. *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 219 N.W.2d 641, 646 (1974); *see also Rochester City Lines, Co. v. City of Rochester*, 868 N.W.2d 655, 661 (Minn. 2015) (holding that the evidence is viewed "in the light most favorable to the nonmoving party" and all doubts are resolved against the moving party). Similarly, "all factual inferences must be drawn against the movant for summary judgment." *Sauter v. Sauter*, 244 Minn. 482, 70 N.W.2d 351, 353 (1955). We must not "weigh facts." *Stringer v. Minn. Vikings Football Club, LLC*, 705 N.W.2d 746, 754 (Minn. 2005). Summary judgment is a "blunt instrument" that should not be granted "when reasonable persons might draw different conclusions from the evidence presented." *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008) (citation omitted).

A district court may grant summary judgment in favor of a defendant in a negligence action "when the record reflects a complete lack of proof" on any one of these four elements: (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of duty being the proximate cause of the injury. *Louis*, 636 N.W.2d at 318 (citing *Lubbers*, 539 N.W.2d at 401). In this case, the district court granted summary judgment in favor of Carlson on the first element, the existence of a duty of care.

Our law regarding a landowner's duty of care is well-established. A "landowner generally has a continuing duty to use .reasonable care for the safety of all entrants." *Id.* at 319 (citing *Baber v. Dill*, 531 N.W.2d 493, 496 (Minn. 1995)). "Entrants" refers to both invitees and licensees. *See Louis*, 636 N.W.2d at 318-19; *Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639, 647 (1972). In this case, the parties agree that Shawn, an invited guest, was an entrant. Thus, Carlson generally had a continuing duty to use reasonable care for Shawn's safety.

But the landowner's duty of care to entrants regarding a particular danger on the property is not unlimited. Restatement (Second) of Torts § 343A (Am. Law Inst. 1965), which we have adopted, carves out an exception to the duty, and then carves out an exception to the exception. A landowner is not liable to invitees when the "danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Peterson v. W.T. Rawleigh Co.*, 274 Minn. 495, 144 N.W.2d 555, 557-58 (1966) (citation omitted) (internal quotation marks omitted) (adopting and applying section 343A).[5]

---

5. To similar effect is Restatement (Second) of Torts § 341A (Am. Law Inst. 1965), which states: "A possessor of land is subject to liability to his invitees for physical harm caused to them by his failure to carry on his activities with reasonable care for their safety if, but only if, he should expect that they will not discover or realize the danger, or will fail to protect themselves against it." As the comment to section 341A explains, "[A]n invitee enters the premises with the implied assurance of preparation and reasonable care for

Summarizing our law and applying it to this case: Carlson, the landowner, is liable to Shawn, the guest, for harm to Shawn arising from an activity or condition on Carlson's property, *except* if the danger was known or obvious to Shawn, *unless* Carlson should have anticipated the harm to Shawn. In other words, was the danger of returning to the Mississippi River to swim alone known or obvious to Carlson's 4-year-old guest, and, even if it was, should Carlson have anticipated the harm to Shawn?[6]

 Whether Carlson should have anticipated the harm is an issue of foreseeability. Whether a risk was foreseeable depends on "whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." *Whiteford ex rel. Whiteford v. Yamaha Motor Corp.*, 582 N.W.2d 916, 918 (Minn. 1998). The foreseeability of danger "depends heavily on the facts and circumstances of each case." *Doe 169 v. Brandon*, 845 N.W.2d 174, 179 (Minn. 2014). As we reaffirmed recently, when the issue of foreseeability is clear, the court, as a matter of law, should decide it, but in close cases, the issue of foreseeability is for the jury. *Montemayor v. Se-*

*bright Prods., Inc.*, 898 N.W.2d 623, 629 (Minn. 2017); *see also Domagala v. Rolland*, 805 N.W.2d 14, 27, 27 n.3 (Minn. 2011); *Bjerke v. Johnson*, 742 N.W.2d 660, 667-68 (Minn. 2007) (citing *Whiteford*, 582 N.W.2d at 918); *Lundgren v. Fultz*, 354 N.W.2d 25, 28 (Minn. 1984); *Ill. Farmers Ins. Co. v. Tapemark Co.*, 273 N.W.2d 630, 636-38 (Minn. 1978) (holding that the issue of foreseeability should be submitted to the jury where "reasonable persons might differ"). As *Montemayor* emphasized, the issue of foreseeability is "close" and must go to the jury when the "evidence presents an explicit dispute of material fact" or when a reasonable person "might draw different conclusions from the evidence." 898 N.W.2d at 629 n.3.

## I.

 The threshold question in this case is whether Carlson has shown that he is not liable because the danger of the activity or condition on the land was "known or obvious" to Shawn. *See Louis*, 636 N.W.2d at 322 (remanding to the district court for consideration of whether the harm to the plaintiff "was either known to him or one that he reasonably should have been expected to know"); *Ill. Farmers*, 273

his protection and safety while he is there." *Id.*, cmt. a. The landowner must protect the invitee not only from conditions of which the invitee does not know or have reason to know, but also "from activities of which the invitee knows or has reason to know, where it may reasonably be expected that [the invitee] will fail to protect himself." *Id.* Although the language of sections 341A and 343A is not precisely congruent, the concepts appear to be the same.

The parties litigated the case under section 343A, which we have expressly adopted. We use that section's framework for this analysis.

6. Rather than relying on section 343A, relating to invitees, the court of appeals cited the Restatement (Second) of Torts § 343B (Am. Law Inst. 1965), which states: "In any case where a possessor of land would be subject to

liability to a child for physical harm caused by a condition on the land if the child were a trespasser, the possessor is subject to liability if the child is a licensee or an invitee." *See Senogles*, 2016 WL 3659314, at *3. The court of appeals concluded that "[i]t follows that if a landowner would *not* be liable to a trespassing child for physical harm caused by a condition on the land (artificial or natural), the landowner is *not* subject to liability if the child is a licensee or invitee." *Id.* at *3 (citing *Lee v. State Dep't of Nat. Res.*, 478 N.W.2d 237, 239 (Minn.App. 1991)). This reasoning is exactly backwards. It also directly conflicts with existing case law. *See Foss v. Kincade*, 766 N.W.2d 317, 321 (Minn. 2009) ("[C]hild licensees and invitees have greater protection than a trespasser.").

N.W.2d at 634, 636-38 (remanding to the district court for consideration of whether the allegedly negligent party "knew or should have known" of the dangerous circumstances). If the parties raise a genuine issue of material fact regarding whether an individual "knew or should have known" of the danger, summary judgment should be denied. *Ill. Farmers*, 273 N.W.2d at 634, 636-38.

■ "Known" is a subjective test that depends upon the entrant's actual "appreciation of the danger." Restatement (Second) of Torts § 343A cmt. b (Am. Law Inst. 1965). "Thus the condition or activity must not only be known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated." *Id.*

■ We may proceed quickly past the "known" test. Carlson did not move for summary judgment on that theory. The district court made no finding on whether Shawn actually *knew* of the danger of returning to the river to swim alone. And the court of appeals' holding was based solely on the "obvious" test, to which we now turn.

■ Whether a danger is "obvious" is an objective test. *Munoz v. Applebaum's Food Mkt., Inc.*, 293 Minn. 433, 196 N.W.2d 921, 922 (1972). The danger is "obvious" only if "both the condition and the risk are apparent to and would be recognized by a reasonable [person] 'in the position of the visitor.'" *Louis*, 636 N.W.2d at 321 (quoting Restatement (Second) of Torts § 343A cmt. b)).

■ It is black-letter law that a child's past experience informs an objective test, such as the obviousness of a risk. The objective standard for children is set forth in the Restatement (Second) of Torts § 283A cmt. b:

> The standard of conduct required of the child is that which it is reasonable to expect of children of like age, intelligence, and experience. . . . Likewise to be taken into account are the circumstances under which the child has lived, and his experience in encountering particular hazards, or the education he has received concerning them. If the child is of sufficient age, intelligence, and experience to understand the risks of a given situation, he is required to exercise such prudence in protecting himself, and such caution for the safety of others, as is common to children similarly qualified.[7]

We recognized the same nearly 70 years ago. *Audette v. Lindahl*, 231 Minn. 239, 42 N.W.2d 717, 719 (1950) (stating that a child is required to exercise the "degree of care which would ordinarily be exercised by a child of that age, experience, and intelligence, under the same or similar circumstances"); *see also Peterson v. Minn. Power & Light Co.*, 206 Minn. 268, 288 N.W. 588, 589 (1939) (considering the decedent's "age and background" when applying the objective standard of a reasonable person). Similarly, in *Toetschinger v. Ihnot*, 312 Minn. 59, 250 N.W.2d 204, 210 (1977), we cautioned that, "when the case is submitted to the jury, it is to be made clear . . . that the degree of care expected of a child is that commensurate with the age, mental capacity, and understanding of children of similar age acting under similar circumstances." We added, "[t]his is a matter which jurors chosen from the community generally are particularly well able to assess." *Id.*

---

7. The dissent is correct that section 283A addresses the standard for whether a child is negligent, rather than the negligence of a property owner. But it misses the relevant point that both tests—obviousness under section 343A and negligence under 283A—apply the objective standard of a reasonable person to the injured party.

We look, then, to whether the record establishes that Carlson carried his burden to establish the obviousness exception to his duty as a landowner: that the danger of swimming unattended in the river was objectively "obvious" to a reasonable 4-year-old in Shawn's position. It is true that Shawn asked an adult to take him to the river, implying that he understood the need for supervision. But the record contains no information that it was obvious to an objectively reasonable 4-year-old that, having already been swimming, returning to swim alone in the Mississippi River was dangerous. To the contrary, the undisputed facts generate a reasonable inference that the danger was *not* obvious to a reasonable 4-year-old. Shawn had already been swimming on a hot day, he had enjoyed it, and he remained in his swimsuit.

 Further, there were disputed material facts sufficient to raise a genuine issue regarding whether Shawn "should have known" of the danger posed by swimming unsupervised. Specifically, the parties disputed Shawn's prior swimming experience. Shawn's disputed experience swimming in rivers was material to the question of whether a reasonable child in his position would consider the danger of swimming in the river to be obvious.[8]

The district court's analysis on obviousness (embedded in its foreseeability analysis) seems to have been influenced by a statement from a legal encyclopedia that the "danger embodied by water may reasonably be expected, under ordinary conditions, to be fully understood and appreciated by any child of an age to be allowed at large. The courts have frequently observed in this connection that even young children have a natural fear of water." 62 Am. Jur. 2d *Premises Liability* § 370 (2d ed. 2005) (citations omitted).[9] The district court's reliance on this statement was misplaced. The statement is limited to children "of an age to be allowed at large." *Id.* The record before us does not show that, at 4 years of age, Shawn was old enough to be left unsupervised near water. Further, the notion that "even young children have a natural fear of water," *id.*, is a gross generalization that ignores a number of circumstances, including the age of the child, the child's prior swimming experience, and the type and condition of the water. Moreover, the legal encyclopedia only cited a single case from the Court of Appeals of Georgia. *Id.* (citing *Higginbotham v. Winborn*, 135 Ga.App. 753, 218 S.E.2d 917, 921 (1975) (citing *McCall v. McCallie*, 48 Ga.App. 99, 171 S.E. 843, 844 (1933))).

By contrast, our case law contains scenarios in which people—both adults and children—failed to appreciate the dangers of water and a negligence claim was submitted to the jury. *See, e.g., Louis,* 636

---

8. It is true that obviousness *may* be decided as a matter of law on summary judgment if, for example, the injured party's experience with an activity or condition is undisputed. *See Sutherland v. Barton*, 570 N.W.2d 1, 7-8 (Minn. 1997) (emphasizing the injured party's undisputed "expertise as an electrician" to deny liability for the "known and obvious danger" of live electrical wires); *Baber*, 531 N.W.2d at 496 (denying liability for "known and obvious conditions" because the injured party undisputedly helped construct the dangerous condition of exposed rebar in a retaining wall). Such is not the case here.

9. The court of appeals based its holding in part on a similar line of reasoning from its own precedent, *Lee*, 478 N.W.2d at 239. *See Senogles*, 2016 WL 3659314, at *3. In *Lee*, the court of appeals held that the public landowner owed no duty to a 4-and-a-half-year-old child trespasser because the dangers of a public lake were obvious and the child was old enough to be left unsupervised. *Lee*, 478 N.W.2d at 239. For the reasons discussed below, we disagree with this line of reasoning.

N.W.2d at 321-22 (deciding that the district court erred in dismissing a negligence action as a matter of law for injuries suffered by an adult in a swimming pool); *Davies v. Land O'Lakes Racing Ass'n*, 244 Minn. 248,69 N.W.2d 642, 647-48 (1955) (upholding the district court's decision that declined to dismiss a negligence action as a matter of law for injuries suffered by a 5-year-old child in a catch basin for rainwater runoff).[10]

We have also recognized that dangers that are obvious to adults may not be fully appreciated by children of Shawn's age. *See Heitman v. Lake City*, 225 Minn. 117, 30 N.W.2d 18, 23 (1947) (stating, "[c]hildren, through childish inattention, may fail to observe conditions which an adult might reasonably be expected to discover," in a case involving a 7-year-old child who drowned); *see also Gryc v. Dayton-Hudson Corp.*, 297 N.W.2d 727, 743 (Minn. 1980) (stating that a 4-year-old child was "incapable of appreciating the risk" that her pajamas could ignite from an electric burner); *Doren v. Nw. Baptist Hosp. Ass'n*, 240 Minn. 181, 60 N.W.2d 361, 367 (1953) (stating that a 6-year-old child "would not be likely to ... realize the risk" of playing near a pile of ash); *Decker v. Itasca Paper Co.*, 111 Minn. 439, 127 N.W. 183, 184 (Minn. 1910) (stating that the danger of

playing in an elevator was not obvious to a 5-year-old child).

Further, we have specifically adopted Restatement (Second) of Torts § 339 (Am. Law. Inst. 1965), regarding child trespassers attracted to nuisances. *Szyplinski v. Midwest Mobile Home Supply Co.*, 308 Minn. 152, 241 N.W.2d 306, 309-10 (1976) (adopting section 339 of the Restatement). Comment j of section 339 notes that a landowner's duty under the attractive-nuisance doctrine is extended to instances in which "the possessor knows that children too young to appreciate such dangers are likely to trespass on his land."[11]

The dissent cites a number of cases from foreign jurisdictions to the effect that water is an obvious danger to all children. These cases are not consistent with our own precedent, which has rejected blanket rules. Further, other courts across the country have reached the opposite conclusion. *See, e.g.*, *King v. Lennen*, 53 Cal.2d 340, 1 Cal.Rptr. 665, 348 P.2d 98, 99-100 (1959) (emphasizing that "the circumstance that a condition giving rise to injury is common in character does not necessarily exclude liability, that the ability to appreciate danger varies with the age and mental capacity of the child," and holding that the 1-and-a-half-year-old child "could not reasonably be expected to realize or appreciate the danger" of a swimming pool);

---

**10.** The dissent asserts that *Davies* suggests that the danger of water is obvious to children unless unusual conditions are present. This reading overstates *Davies*. First, we specifically rejected the argument in *Davies* "that the danger in ponds and lakes or other bodies of water, whether natural or artificial, is objective." *Davies*, 69 N.W.2d at 646. In fact, we stated, "Every case of this nature must necessarily stand or fall upon its own particular facts." *Id.* at 647. Moreover, we specifically emphasized that we were making our decision in *Davies* "[i]n view of the tender age of the child." *Id.* at 646. *Davies* does not stand for the proposition that water is obviously dangerous to all children. Rather, *Davies* rec-

ognized that landowners may be subject to liability for injuries to trespassing children, and they have a duty to protect "children who because of their tender years do not discover or are deemed incapable of discovering the condition or realizing the risk involved." *Id.* at 647.

**11.** We have not had occasion to consider whether to adopt an age limitation for negligence. *See* Restatement (Third) of Torts: Phys. & Emot. Harm § 10 (Am. Law Inst. 2010) (stating that a "child less than five years of age is incapable of negligence").

*Bennett v. Stanley*, 92 Ohio St.3d 35, 748 N.E.2d 41, 44-45 (2001) (reversing and remanding a grant of summary judgment that dismissed a negligence claim on behalf of a 5-year-old child who drowned in a pool, and stating, in the context of determining whether water is an obvious danger, that landowners cannot reasonably expect "[c]hildren of tender years" to exercise the "same discernment and foresight in discovering defects and dangers . . . that older and experienced persons habitually employ" (quoting *Di Gildo v. Caponi*, 18 Ohio St.2d 125, 247 N.E.2d 732, 734 (1969))); *Eaton v. R.B. George Invs., Inc.*, 152 Tex. 523, 260 S.W.2d 587, 591 (1953) (holding "as a matter of law that a child of the tender age of [3 years and 8 months] could not have realized the risk or danger" of an artificial body of water); *Degel v. Majestic Mobile Manor, Inc.*, 129 Wash.2d 43, 914 P.2d 728, 729 (1996) (holding, in a case involving a child less than 3 years old, "that a landowner is not exempt from the duty to exercise reasonable care to protect invitees against potentially dangerous conditions on the land solely because the potential danger includes risks which are inherent in a natural body of water").

We decline to adopt a categorical rule that the danger of swimming unattended in any Minnesota river, lake, or pool is necessarily obvious to all children, no matter how young and inexperienced. In this case, in which there are disputed facts regarding Shawn's experience and differing reasonable inferences about whether the danger of returning to the river should have been obvious to Shawn, Carlson did not carry his burden to establish the exception to his duty as a landowner. Summary judgment should not have been granted.

## II.

█ But even assuming that the danger had been obvious to Shawn, Carlson would still owe a duty to Shawn if Carlson should have anticipated the harm. A landowner is not relieved of the duty to invitees for dangers that are known or obvious if the landowner "should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A. In this regard, the court of appeals erred when it ended its analysis once it concluded that "the danger of the river was open and obvious to Shawn. We therefore need not determine whether it was foreseeable that Shawn would re-enter the river." *Senogles*, 2016 WL 3659314, at *3. Instead, the court of appeals should have determined whether the exception to obviousness—foreseeability—applied. That is where we pick up the analysis.

█ "When determining whether a danger is foreseeable, we 'look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility.'" *Foss v. Kincade*, 766 N.W.2d 317, 322 (Minn. 2009) (quoting *Whiteford*, 582 N.W.2d at 918). What is objectively reasonable for the landowner to expect depends, in part, on the age of the entrant. We have previously recognized that children often behave in dangerous ways and that adults should anticipate that they will do so. *See Slinker v. Wallner*, 258 Minn. 243, 103 N.W.2d 377, 382 (1960) ("[T]here is virtually no condition upon any land with which a child may not possibly get himself into trouble. . . . Children may, and do, do practically everything." (citation omitted) (internal quotation marks omitted)); *Mattson v. Minn. & N.W.R. Co.*, 95 Minn. 477, 104 N.W. 443, 446 (1905) ("Children, wherever they go, must be expected to act upon childish instincts and impulses; and others, who are chargeable with a duty of care and caution towards them, must calculate upon this, and take precautions accordingly.").

Viewing the undisputed facts and the reasonable inferences from them in favor of Senogles, the party against whom summary judgment was granted, whether there was an objectively reasonable expectation of danger that Carlson should have anticipated is, at least, a close call. Specifically, Carlson hosted a party with lots of children at a property with access to 76 feet of riverfront on a 90-degree sunny day. Carlson had no explicit plan to supervise the children or furnish them with life jackets, even though he owned several.[12] The children swam without life jackets and enjoyed it. Shawn, 4 years old, still wearing his swimsuit and playing in an unfenced area, had ready access to the water and returned to it while unattended. These facts and the reasonable inferences from them make the issue of foreseeability a close one to be decided by a jury. *See Montemayor*, 898 N.W.2d at 629, 633. Thus, the district court erred in granting summary judgment to Carlson on the issue of foreseeability.[13]

Finally, Carlson asks that we announce a new rule of law that a Minnesota landowner owes no duty of care to a child entrant if the child enters the land accompanied by a parent or guardian, no matter how foreseeable the harm. We decline Carlson's request. No Minnesota precedent supports such a blanket rule, and it would undermine not only our foreseeability jurisprudence, but also our system of comparative fault. *See* Minn. Stat. § 604.01, subd. 1 (2016) (stating that the court may "direct the jury to find separate special verdicts determining ... the percentage of fault attributable to each party"). Our state has rejected or significantly limited other such absolute tort doctrines that increase "the likelihood of unfairness" and has opted for a comparative fault framework that "contemplates justice for all parties." *Toetschinger*, 250 N.W.2d at 208, 210. *See* Minn. Stat. § 604.01, subd. 1 ("Contributory fault does not bar recovery ... if the contributory fault was not greater than the fault of the person against whom recovery is sought"); *Olson v. Hansen*, 299 Minn. 39, 216 N.W.2d 124, 127-28 (1974) (discussing the limits of the assumption-of-risk doctrine); *Koval v. Thompson*, 272 Minn. 53, 136 N.W.2d 789, 792 (1965) (discussing the limits of the last-clear-chance and discovered-peril doctrines).

Although we do not adopt the absolute no-duty rule that Carlson proposes, nothing in our decision today prevents Carlson from arguing to the jury that, because he understood that Shawn was to be supervised by others, Carlson could not foresee the danger to Shawn, Carlson was not negligent, or Carlson's actions were not the proximate cause of Shawn's injury. We decide only that Senogles is entitled to a trial.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

Dissenting, Anderson, J., Gildea, C.J., Stras, J.

---

12. The record does not show whether Carlson inquired—or then had any knowledge—about Shawn's swimming experience or lack of it.

13. The dissent asserts it was not foreseeable—as a matter of law, no less—that Shawn would walk back to the river unnoticed. But any parent of a mobile 4-year-old child will understand the proclivity of young children to wander off quickly to pursue whatever curiosity intrigues them. In this case, the opportunity to wander existed because the children were playing in an unfenced area away from the adults.

## DISSENT

ANDERSON, Justice (dissenting).

This case involves an almost 5-year-old child who nearly drowned in a tragic accident. But not all tragic accidents are compensable in litigation. Here, the court unearths a factual dispute where none exist to conclude that a jury could find that the landowner should have anticipated this injury and, therefore, the landowner had a duty to protect the child from the Mississippi River. By so holding, the court opens the door to a significant, and unwarranted, expansion of social host liability.

It is unnecessary for a jury to decide this case because the material facts are undisputed. The Mississippi River is an obvious danger and there was no reason to anticipate the injury despite this obviousness. Therefore, I respectfully dissent.

## I.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008). The genuine issue of material fact must be shown by substantial evidence. *Gunderson v. Harrington*, 632 N.W.2d 695, 704 (Minn. 2001). A metaphysical doubt as to a factual issue will not defeat a motion for summary judgment. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). A factual dispute is "materi-al" when its resolution will affect the outcome of the case. *Antonello v. Comm'r of Revenue*, 884 N.W.2d 640, 645 (Minn. 2016).

In a negligence action, summary judgment is to be granted when there is a complete lack of proof on any of the four elements of a negligence claim: (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, (4) or proximate causation. *Gradjelick v. Hance*, 646 N.W.2d 225, 234 (Minn. 2002). Here, Carlson argues that Senogles has not proven the existence of a duty of care.

We have adopted the Restatement (Second) of Torts § 343A (Am. Law Inst. 1965), which states that a landowner does not owe a duty to his visitors "for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." [1] *See Baber v. Dill*, 531 N.W.2d 493, 495-96 (Minn. 1995). The danger need not be both known and obvious; it is sufficient if either one of these requirements is met. Because I conclude that the Mississippi River is an obvious danger, it is unnecessary to address whether the danger was known to Shawn.

A danger is obvious when "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judg-

---

1. The court's citation of Restatement (Second) of Torts § 341A (Am. Law Inst. 1965) is beside the point here. The parties have not addressed this section of the Restatement. It is particularly odd that the court relies on section 341A because that section distinguishes between licensees and invitees. We abolished this distinction decades ago. *Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639, 642 (1972). Furthermore, we have cited section 341A only once, and this citation occurred before we abolished the distinction between licensees and invitees. *Tonne v. Becker Grain & Lumber Co.*, 273 Minn. 73, 139 N.W.2d 797, 799 (1966). And at any rate, this section does not apply here because it addresses harm caused by the possessor's "failure to carry on his activities with reasonable care." Restatement (Second) of Torts § 341A. It does not apply to harm caused by natural conditions on the property, such as a river. Therefore, the court's discussion relying on section 341A is confusing, outdated, and irrelevant.

ment." Restatement (Second) Torts § 343A, cmt. b. Whether a danger is obvious is "an objective test: the question is not whether the injured party actually saw the danger, but whether it was in fact visible." *Louis v. Louis*, 636 N.W.2d 314, 321 (Minn. 2001).

We have repeatedly stated that the existence of a legal duty is a question of law to be determined by the court.[2] For example, in *Domagala v. Rolland*, we held that the existence of a legal duty is "ordinarily properly decided by the court prior to submitting the case to the jury." 805 N.W.2d 14, 27 (Minn. 2011). Similarly, in *Foss v. Kincade* we held that "[t]he existence of a legal duty in a negligence case ... is a question of law." 766 N.W.2d 317, 320 (Minn. 2009). And in *Larson v. Larson*, we held that "[g]enerally, the existence of a legal duty is an issue for the court to determine as a matter of law." 373 N.W.2d 287, 289 (Minn. 1985). Therefore, whether a duty exists under Restatement § 343A is a question of law.[3]

## II.

Nevertheless, the court holds that a jury must decide whether the danger of the Mississippi River was objectively obvious because it concludes that one fact—Shawn's experience with water—is disputed. Senogles did not argue before the district court that Shawn's experience with water was a genuine issue of material fact.[4] Although several people were asked about Shawn's experience with water, only three were able to describe his experience. Senogles stated that she had taken Shawn swimming at both a pool and a water park earlier that summer. Shawn's grandmother stated that she took Shawn swimming in a lake "all the time." Another relative stated that she had seen pictures on Facebook of Shawn swimming in a river on prior occasions. In other words, it is undisputed that Shawn had some prior experience swimming; the only question is how much experience. The dispute here is a minor difference of degree.

---

**2.** Although we have said that in "close cases" foreseeability should be submitted to the jury, *Domagala v. Rolland*, 805 N.W.2d 14, 27 (Minn. 2011), we recently clarified that the "close cases" language does not modify the standard of review for summary judgment, *Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 633 (Minn. 2017). Therefore, on a motion for summary judgment when there is no genuine issue of material fact, the court should decide the case as a matter of law without submitting it to the jury. Minn. R. Civ. P. 56.03 ("Judgment *shall* be rendered forthwith if the [record] show[s] that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law." (emphasis added)).

**3.** Senogles argues that whether a condition is known or obvious is a question of fact, citing *Olmanson v. LeSueur Cty.*, 693 N.W.2d 876, 881 (Minn. 2005). But *Olmanson* reached the conclusion that "whether a condition presents a known or obvious danger is a question of fact" based on a misinterpretation of *Louis*,

which *Olmanson* described as "holding that summary judgment was not appropriate because whether the danger posed by a swimming pool was known or obvious was a fact question." *Olmanson*, 693 N.W.2d at 881. *Louis* did no such thing. Instead, *Louis* simply remanded the question of whether the danger was known or obvious to the district court because the district court had not considered the issue. 636 N.W.2d at 321. Moreover, *Louis* expressly held that "[g]enerally, the existence of a legal duty is an issue for the court to determine as a matter of law." *Id.* at 318.

**4.** In her opposition to summary judgment, Senogles specifically listed the "material facts in dispute." Shawn's swimming experience was not included on the list. This omission is a concession that Shawn's swimming experience is not material, not disputed, or both. By not including Shawn's swimming experience on the list of "material facts in dispute," Senogles conceded that it is not a proper basis on which to deny Carlson's motion for summary judgment.

Whether Shawn had several or only a few swimming experiences does not make a material difference, especially because the obviousness of the danger is an objective standard.[5] *See Louis*, 636 N.W.2d at 321. Therefore, there are no genuine issues of material fact.

### III.

Because there are no genuine issues of material fact, we must decide, based on the undisputed facts, whether the danger of the river was obvious to a reasonable person in Shawn's position. *See id.* Applying this test in other cases, we have concluded that water is an obvious danger. For example, in *Hammerlind v. Clear Lake Star Factory Skydiver's Club*, a skydiver was blown off course, missed the approved skydiving drop zone, landed in a lake, and drowned. 258 N.W.2d 590, 593 (Minn. 1977). We held that the owner of the land where the drop zone was located did not owe a duty to the skydiver because the lake "posed an obvious danger to parachutists, given its proximity to the drop zone and the danger of water generally to jumpers." *Id.* at 594. We also held that the landowner had no reason to anticipate the injury despite the obviousness of the danger. *Id.*

Similarly, other courts have found that lakes and rivers pose obvious dangers. For example, numerous courts have concluded that the danger of jumping into a river is obvious. *See Harmon v. United States*, 532 F.2d 669, 671 (9th Cir. 1975) (concluding that the danger of drowning in a river was obvious to white-water rafters); *Suchy v. City of Geneva*, 380 Ill.Dec. 395, 8 N.E.3d 565, 573 (Ill. App. Ct. 2014) ("[B]odies of

water are deemed to present open and obvious dangers, whether they are natural or man-made. .... [A body of] water's dangers are considered to be apparent to both experienced swimmers and young children."); *Greenslade v. Mohawk Park, Inc.*, 59 Mass.App.Ct. 850, 798 N.E.2d 336, 339 n.4 (2003) (citing cases).

Nevertheless, the court concludes that the danger might not have been obvious to Shawn because, at the time of his injury, he was 4 years and 8 months old. But this conclusion is against the weight of our case law. We have recognized that even young children can appreciate danger. For example, in a case involving a child less than 6 years old, we stated that children under the age of 7 have some "capacity ... to appreciate and avoid the risks of vehicular traffic." *Toetschinger v. Ihnot*, 312 Minn. 59, 250 N.W.2d 204, 211 (1977). In a case involving a 7-year-old child who drowned, we noted that "it is generally conceded that the ordinary body of water, even though it be artificial, while it does involve the risk of death or serious harm, does not constitute an unreasonable risk thereof because even a child to some extent appreciates the risks that are connected with it." *Johnson v. Washington Cty.*, 518 N.W.2d 594, 600 (Minn. 1994) (citation omitted).

In *Davies v. Land O'Lakes Racing Ass'n*, a 5-year-old child drowned after falling into a drainage catch basin that had filled with water on a racetrack construction site. 244 Minn. 248, 69 N.W.2d 642, 643 (1955). Although we held the landowner liable, we painstakingly emphasized the unique dangers of the particular water at issue and distinguished it from other bodies of water. As the court points out, we

---

**5.** In addressing the obviousness of the danger, the court cites comments to Restatement (Second) of Torts § 283A (Am. Law Inst. 1965). But these comments are not relevant. Section 283A addresses the standard for whether a *child* is negligent. The question in this case is whether Carlson was negligent. Whether the danger was obvious is not the same question as whether the injured party was negligent.

said in *Davies* that "[e]very case of this nature must necessarily stand or fall upon its own particular facts." *Id.* at 647. But the relevant facts in *Davies* were far different than they are here. Specifically, *Davies* involved a racetrack that sloped downward toward a drainage catch basin that was left uncovered and unguarded. *Id.* at 644. At the time of the incident, "pools and puddles of water ... surrounded, led up to, and covered the pits, permitting the child to walk in the water and step directly into a hole newly constructed with perpendicular sides where the water was more than six feet deep." *Id.* at 646. We cited several cases suggesting that our analysis was concerned with bodies of water that suddenly drop off into a deep hole. *Id.* at 646-47. But we distinguished these drop-offs from ordinary bodies of water, recognizing that "a possessor of land will not ordinarily be held liable for injuries occurring in ordinary, natural, or artificial bodies of water that *are free of traps and concealments.*" *Id.* at 647 (emphasis added). And we emphasized that the question presented in the case was whether "this body of water, in the state in which it was permitted to exist[,] ... was a danger to trespassing children of tender age *greater than the danger present in the ordinary, open, natural, or artificial body of water.*" *Id.* (emphasis added). There is no evidence that such concealed hazards were present on the Carlson property. Because *Davies* analyzed abnormal circumstances not present here, *Davies* does not preclude a conclusion that ordinary bodies of water pose a danger that is obvious even to young children.

In summary, looking solely at our case law going back many decades, I find little precedent supporting the court's analysis. More critically, by concluding that the obviousness of the danger of the Mississippi River is a fact question for the jury, the court departs from our case law. The result likely will be an enormous expansion in social host liability.

But it is not only Minnesota case law that the court ignores on its way to a jury trial in this case. Other courts also have concluded that water is an obvious danger to children. *See, e.g., Long v. Manzo*, 452 Pa.Super. 451, 682 A.2d 370, 375 (1996) ("Generally, because ponds, pools, lakes, streams and other waters embody perils that are deemed to be obvious to children of the tenderest years, no liability attaches to a possessor of a pond."); *Cooper v. Diesel Serv., Inc.*, 254 Ark. 743, 496 S.W.2d 383, 385 (1973) (stating in a case involving a 6-year-old that "the danger inherent in water in a pond is or should be obvious to a child"), *overruled on other grounds by Farm Bureau Mut. Ins. Co. of Ark. v. Henley*, 275 Ark. 122, 628 S.W.2d 301 (1982); *McGill v. City of Laurel*, 252 Miss. 740, 173 So.2d 892, 898 (Miss. 1965) (explaining that a 6-year-old could understand the danger of drowning); *Hanners v. City of Ashland*, 331 S.W.2d 729, 730 (Ky. 1959) (stating in a case involving an 8-year-old that "the possible hazard of use [of bodies of water] is generally appreciated even by children of tender years"); *Mellas v. Lowdermilk*, 58 N.M. 363, 271 P.2d 399, 401 (1954) ("Ponds, pools, lakes, streams, and other waters embody perils that are deemed to be obvious to children of the tenderest years."); *Dennis v. Spillers*, 199 Okla. 311, 185 P.2d 465, 466 (1947) (stating in a case involving a 7-year-old that "[a] body of water—either standing, as in ponds and lakes, or running, as in rivers and creeks, or being and flowing, as on the shores of seas and bays—is a natural object incident to all countries which are not deserts. Such a body of water may be found in or close to nearly every city or town in the land; the danger of drowning in it is an apparent open danger, the knowledge of which is common

to all"); *Morris v. City of Britton*, 66 S.D. 121, 279 N.W. 531, 532 (1938) (stating in a case involving a 7-year-old that bodies of water "embody perils that are deemed to be obvious to children of the tenderest years"); *Polk v. Laurel Hill Cemetery Ass'n*, 37 Cal.App. 624, 174 P. 414, 418 (1918) ("It would not conform to the dictates of common reason to say that a child of the age of eight years, or even much younger, does not know and fully realize that a fall into a pond of water or a deep reservoir would result in injury to him, if not in his death."); *Athey v. Tenn. Coal, Iron & R. Co.*, 191 Ala. 646, 68 So. 154, 156 (1915) (stating in a case involving a 2-year-old that "[The water's] dangers, such as they are, to children at all able to take care of themselves are such as may be found on every land, are not concealed or disguised so as to create a pitfall, and common experience shows that a reasonable prudence may trust their avoidance to the universal instinct of self-preservation.").

Given the voluminous case law recognizing the obviousness of the danger of water, the risk of the Mississippi River was obvious to an objectively reasonable child of 4 years and 8 months.

## IV.

Having concluded that the Mississippi River is an obvious danger, it is necessary to decide whether Carlson should have anticipated the injury despite the obviousness of the danger. *See Baber*, 531 N.W.2d at 496. In deciding that an injury should not be anticipated despite the obviousness of the danger, we have recognized that, especially when dealing with young children, "the realm of possible harm is much larger than the realm of reasonably foreseeable harm." *Foss*, 766 N.W.2d at 323. When other adults are present, we have considered whether the landowner knew that visiting children "frequently wandered away" from their guardians in the particular location where the injury occurred. *Peterson v. Richfield Plaza, Inc.*, 252 Minn. 215, 89 N.W.2d 712, 718 (1958); *see also Hammerlind*, 258 N.W.2d at 593 (concluding that the pilot of a skydiving plane owed no duty to an injured skydiver because "a reasonable pilot could rely on the jump master" to check the skydiver's safety equipment).

Here, even if it could be anticipated that Shawn would attempt to return to the river unsupervised, it is not reasonable to anticipate that he would succeed in walking to the river unnoticed.[6] To do so, Shawn needed to walk 100 feet without any of the 15 adults (and several older children) at the party noticing that he was wandering away and stopping him. It might be within the realm of conceivable possibility that Shawn would successfully reach the river unnoticed, but it is not reasonable to anticipate that all of the family members would fail to see Shawn walking away, particularly when at least one adult stated that "everybody [was] watch[ing] everybody" at the party.

## V.

Because I conclude that the Mississippi River poses an obvious danger and that Carlson should not have anticipated Shawn's injury despite this obviousness, I would hold that Carlson did not owe a duty

---

**6.** Although it is unnecessary to conclude that Carlson could not reasonably anticipate that Shawn would attempt to return to the river unsupervised, there is evidence that Shawn was unlikely to do so. For example, before he went swimming earlier in the day, he asked an adult to accompany him and waited on the steps with his grandmother until an adult was available to supervise the swimming activities. This behavior suggests that if Shawn wanted to return to the river, he was likely to ask an adult before doing so.

to Shawn and I would affirm the court of appeals.

GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Anderson.

STRAS, Justice (dissenting).

I join in the dissent of Justice Anderson.